**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VINCENT W. DEPASQUALE, ) | |
| ) | 3:07-CV-00107-LRH-VPC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| NEVADA DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | April 30, 2009 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss, or in the alternative, motion for summary judgment (#s 54, 56, 57). Plaintiff opposed (#63). Defendants did not file a reply. For the reasons stated below, the court recommends that defendants' motion to dismiss, or in the alternative, motion for summary judgment (#54) be granted.

### I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Vincent Depasquale ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#35). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and to due process of the law. *Id*. After screening, the remaining defendants are Adam Endel, ESP Assistant Warden of Programs, Lt. Jones, correctional officer at ESP, Dr. Bruce Bannister, NDOC medical director, Dr. Terrell Bishop, Neurologist at ESP, Pat Orders, psychologist at ESP, and Sergeant Hendrix, correctional officer at ESP.[1] *Id*.

---

[1] In its September 9, 2008 screening order, the court dismissed Count I of the third amended complaint (#35), and "all claims against the Nevada Department of Corrections and defendants Skolnik, McDaniel, and Brooks, and all official capacity claims against all defendants" (#37).

1  Plaintiff filed his third amended complaint on August 1, 2008. After screening, counts II and III
2  remain. In count II, plaintiff alleges that defendants Jones and Orders violated his Eighth
3  Amendment rights when they used excessive force to remove him from his cell; specifically, they
4  broke down his door, forced him from his bed, slammed him against the wall, which injured his
5  elbow, and forcibly brought him to the hospital to give him a shot against his will (#35, p. 6).
6  Plaintiff also claims that defendant Hendrix violated his Fourteenth Amendment right to due
7  process when he did not allow plaintiff to call witnesses at a disciplinary hearing regarding an
8  incident involving a broken sprinkler in plaintiff's cell. *Id*. In count III, plaintiff contends that
9  defendants are violating his Eighth Amendment rights because they are acting with deliberate
10 indifference toward his serious medical needs. Specifically, plaintiff claims that he is infected
11 with hepatitis C and suffers from mental health problems, and that Drs. Bannister and Bishop
12 refuse to treat him for these maladies. *Id*. p. 7. Plaintiff also alleges that he became infected with
13 hepatitis C when prison officials forced him to take injections of medications to treat his mental
14 health problems. *Id*.

15    The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff
16 appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit
17 of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*
18 *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

19                    **II.  DISCUSSION & ANALYSIS**
20     **A.    Discussion**
21          **1.    Motion to Dismiss Standard**
22    When considering a motion to dismiss for failure to state a claim upon which relief can
23 be granted, all material allegations in the complaint are accepted as true and are construed in the
24 light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir.
25 1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). "As a general rule, 'a district
26 court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"
27 *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*,
28 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa*

*Clara*, 307 F.3d 1119 (9th Cir. 2002)). However, Rule 12 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6). Notwithstanding this rule, "a motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleadings happen to be filed with the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th Cir. 1983). A motion filed with extraneous materials is to be treated as a motion for summary judgment only if the court relies on the material. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44 (9th Cir. 2003). Conversion to summary judgment is at the discretion of the court and the court must take some affirmative action before conversion is effected. *Id*. at 1144.

### 2.    Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and

3

1  submitting evidence which demonstrates the absence of any genuine issue of material fact.
2  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,
3  the party opposing the motion may not rest upon mere allegations or denials in the pleadings but
4  must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477
5  U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for
6  discovery, against a party who fails to make a showing sufficient to establish the existence of an
7  element essential to that party's case, and on which that party will bear the burden of proof at
8  trial. *Celotex*, 477 U.S. at 322-23.

   **B.      Analysis**

10  Defendants submit numerous grievances and responses, four affidavits, a medical incident
11  report (#54), as well as an audio cassette recording of plaintiff's disciplinary hearing (#57
12  (*sealed*)). In opposition, plaintiff submits seven exhibits (#63). The court converts defendants'
13  motion to dismiss, or in the alternative, motion for summary judgment, into a motion for
14  summary judgment pursuant to Rule 12(b)(6).[2]

   **1.      Exhaustion of Administrative Remedies**

16  Defendants first argue that plaintiff has not exhausted his administrative remedies with
17  regard to the due process claim in count II or the deliberate indifference claim in count III (#54,
18  p. 7). Specifically, defendants attach plaintiff's grievance history report and claim this
19  demonstrates that the only issue plaintiff fully exhausted is his excessive force claim in count II.
20  *Id*. p. 8. Plaintiff argues that he did exhaust and that he submits his grievances, medical kites, and
21  letters to medical personnel (#63, p. 3).

22  The Prison Litigation Reform Act of 1996 (the "PLRA") amended 42 U.S.C. § 1997e to
23  provide that "[n]o action shall be brought with respect to prison conditions under section 1983
24  of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[2] Plaintiff had notice that defendants' motion to dismiss could be treated as a motion for summary judgment, as the court issued a *Klingele* order on January 9, 2009 (#55).

4

1  correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.
2  § 1997e(a) (2002).

3  Although once within the discretion of the district court, the exhaustion of administrative
4  remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need
5  not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534
6  U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40, n.5. Even when the prisoner seeks
7  remedies not available in the administrative proceedings, notably money damages, exhaustion is
8  still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the
9  Supreme Court has strictly construed section 1997e(a). *Id.* at 741, n.6 ("[w]e will not read futility
10 or other exceptions into statutory exhaustion requirements where Congress has provided
11 otherwise").

12 All administrative remedies must be exhausted before the action is "brought" by a prisoner.
13 In *Vaden v. Summerhill*, the Ninth Circuit adopted the Seventh Circuit rule that "an action is
14 'brought' for purposes of § 1997e(a) when the complaint is tendered to the district clerk." 449
15 F.3d 1047, 1050 (9th Cir. 2006). Additionally, the court must dismiss if exhaustion requirements
16 are not met when the suit is brought, "even if the plaintiff exhausts his administrative remedies
17 while the litigation is pending." *Id.*

18 Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional
19 requirement. As such, inmates are not required to specifically plead or demonstrate exhaustion
20 in their complaints. *Jones*, 127 S.Ct. at 921. Rather, it is the defendant's responsibility to raise
21 failure to exhaust as an affirmative defense.

22 The NDOC grievance procedure is governed by A.R. 740 (#12, Ex. A). In order to exhaust
23 available remedies, A.R. 740 requires as follows: (1) an informal review process; (2) a first level
24 formal grievance appealing the informal grievance decision to the warden; and (3) a second level
25 grievance, which is decided by the Assistant Director of Operations. *Id*. A.R. 740 requires NDOC
26 officials to respond at each grievance level within a specified time period, beginning from the
27 date of receipt of the inmate's grievance. *Id*. Inmates are given six months to file an informal
28 grievance when the claims involve personal property damage or loss, personal injury, medical

5

1 claims or any other torts claims. *Id.*, p. 14. Plaintiff then has five days after the return of a
2 decision based on the level of review to appeal the decision. *Id.*

### 2. Count II (due process) and Count III (deliberate indifference)

Defendants submit plaintiff's "Grievance History Report" to demonstrate that plaintiff failed to exhaust his administrative remedies with regard to his due process claim in count II and his deliberate indifference claim in count III (#54, ex. A). Plaintiff submits his grievances, medical kites and letters to demonstrate that he has exhausted these claims (#63, exs. A-F). Plaintiff states that three letters he sent to Dr. Bannister are used to administratively address his medical problems, therefore exhausting his deliberate indifference claims. *Id*. p. 3. Plaintiff also argues that his complaints of his eye infection "have not evaded the grievance levels fully" because he sent medical kites and partial grievances, to which defendant Endel responded he would forward plaintiff's requests to the medical department in Carson City. *Id*. p. 4.

First, the court notes that plaintiff cannot exhaust his administrative remedies through means outside of the grievance process. Writing letters to doctors does not qualify as any step in the grievance procedure. Plaintiff must follow the procedure set out in AR 740. Further, partial grievances are not sufficient to exhaust administrative remedies. Plaintiff must submit informal, first, and second level grievances, in accordance with AR 740, before filing a lawsuit to fully exhaust his administrative remedies.

With regard to the due process claim in count II, it appears that plaintiff never submitted a grievance complaining that defendant Hendrix violated his Fourteenth Amendment right to due process (#54-2, ex. A). There is also no evidence that plaintiff appealed the disciplinary decision. Plaintiff has not submitted evidence of exhaustion of his due process claim in count II. Therefore, defendants' motion is granted as to the due process claim in count II.

With regard to the deliberate indifference claim in count III, plaintiff has submitted multiple grievances complaining of his eye infection, elbow pain, and hepatitis C treatment. Plaintiff filed informal and first level grievances complaining of his elbow pain in October 2005. Plaintiff did not file a second level grievance (#54-2, ex. A, p. 15). Plaintiff filed an informal grievance complaining of elbow pain and requesting a consultation with a doctor to discuss

6

1 surgery in January 2007. *Id*. ex. A, p. 8. Plaintiff did not file first or second level grievances.
2 Plaintiff filed an informal grievance regarding an eye infection in August 2007. *Id*. ex. A, p. 6.
3 Plaintiff did not file first or second level grievances. Plaintiff filed an informal grievance
4 complaining that he was not receiving adequate medical or mental health treatment in July 2007.
5 *Id*. Plaintiff attempted to file a first level grievance, but it was returned as untimely. *Id*. Plaintiff
6 filed informal, first and second level grievances regarding eye infections, liver pain, hepatitis C
7 and neck pain from May through August 2008. *Id*. ex. A, p. 5. Therefore, plaintiff exhausted
8 issues related to treatment of his eye problems and hepatitis C on September 3, 2008, when his
9 second level grievance was denied. *Id*.  Plaintiff filed his third amended complaint on August 1,
10 2008 (#35). Therefore, plaintiff only exhausted his administrative remedies after he brought the
11 instant action. The court must dismiss if exhaustion requirements are not met when the suit is
12 brought, "even if the plaintiff exhausts his administrative remedies while the litigation is
13 pending." As such, because plaintiff failed to exhaust his administrative remedies as to his claim
14 of deliberate indifference, defendants' motion is granted as to count III.

15 **3.    Count II (Excessive Force and Due Process Claims)**

16 As set out above, in count II, plaintiff alleges that defendants Jones, Orders, and Endel
17 violated his Eighth Amendment rights by using excessive force when they broke through his cell
18 door, brought him to the infirmary and forcibly gave him a shot without his consent (#35, p. 5).
19 Further, defendant Hendrix violated his Fourteenth amendment rights when he would not allow
20 plaintiff to call a witness at his disciplinary hearing regarding whether plaintiff broke a sprinkler
21 in his cell. *Id*. As the court dismissed plaintiff's due process claim for failure to exhaust, it will
22 only discuss the excessive force claim here.

23 **a)    Excessive Force**

24 Defendants contend that defendants Jones, Orders and Endel did not use excessive force
25 when they extracted plaintiff from his cell (#54, p. 9). Rather, "planned force was used." *Id*. p.
26 10. Defendants explain that plaintiff was being moved to the infirmary for treatment, and that
27 plaintiff "failed to comply with multiple direct orders given to him by NDOC staff to get out of
28 bed and come to his cell door to be restrained for movement to the infirmary." *Id*. Defendants

1  state that despite these orders, plaintiff remained on his bed with his blanket pulled over his head
2  and was non-responsive to defendants' orders. Therefore, "[a]n extraction team was utilized to
3  enter Plaintiff's cell, gain compliance and move him to the infirmary." *Id*. Defendants assert that
4  once at the infirmary, plaintiff was placed into four-point soft restraints and was immediately
5  examined for injuries. No obvious injuries were observed. *Id*. & ex. C. Defendants state that the
6  force used was planned and not excessive, and that it was "used exclusively for Plaintiff's, as well
7  as NDOC Staff's, safety and well being." *Id*. Further, defendants followed proper protocol in
8  extracting plaintiff from his cell, the force used was minimal and in good faith, and plaintiff
9  suffered no physical injuries. Defendants argue that without a showing of physical injury, plaintiff
10 cannot prevail on an excessive force claim. *Id*. p. 11-12.

11      Plaintiff's position is that defendants did use excessive force during the cell extraction
12 (#63, p. 9-12). Plaintiff states that he did not hear any orders because he was in a deep sleep,
13 which is why he did not go to his cell door. *Id*. p. 12. He was "extracted without provocation and
14 was forced from his sleep and harassed and mishandled by staff to be transported to the
15 infirmary." *Id*. Plaintiff suffered pain when guards "tossed plaintiff into the wall injuring his
16 shoulder and left elbo[w]." *Id*. p. 9. Further, "because of the pain and later x-rays of his elbo[w]
17 and shoulder," plaintiff suffered injuries from the cell extraction. *Id*.

18      Where an inmate is claiming a violation of his Eighth Amendment right to be free from
19 cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the
20 force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v.*
21 *McMillian*, 503 U.S. 1, 5 (1992).  To determine whether the force used was wanton and
22 unnecessary "the core judicial inquiry is ... whether force was applied in a good-faith effort to
23 maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.  When
24 reviewing use of force, the court considers (1) the extent of the injury suffered by the inmate, (2)
25 the need for application of force, (3) the relationship between that need and the amount of force
26 used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to
27 temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321
28 (1986)). Moreover, there is no need for a showing of a serious injury as a result of the force, but

1  the lack of such an inquiry is relevant to the inquiry. *Id.* at 7-9, *Martinez v. Stanford*, 323 F.3d
2  1178, 1184 (9th Cir. 2003). The court must give deference to the prison officials when reviewing
3  use of force and cannot substitute its own judgment for the judgment of prison officials. *Whitley*,
4  475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should
5  not go to the jury. *Id.*

6  Defendants submit the affidavit of defendant Endel, which states that planned force was
7  used to move plaintiff from his cell to the infirmary because plaintiff failed to comply with
8  multiple direct orders to get out of bed and come to his cell door. Rather, despite the multiple
9  direct orders, plaintiff remained in his bed with his blanket pulled over his head (#54-2, ex. B).
10 Therefore, an extraction team was used to move plaintiff to the infirmary. *Id*. Defendants also
11 submit a "Medical Report of Incident, Injury or Unusual Occurrence," which was completed by
12 a nurse, D. Jones. *Id*. ex. C. This report states that planned, hands-on forced was used on plaintiff
13 to facilitate a move to the infirmary for "severe agitation," which created a "potential for self-
14 harm." *Id*. Additionally, nurse Jones noted that no obvious injuries were observed. *Id*.

15 With regard to the *Hudson* factors, first, it does not appear that plaintiff suffered a serious
16 injury. Although plaintiff may have suffered some pain when he was transported to the infirmary,
17 the incident report states that plaintiff suffered no obvious injuries. Plaintiff has not presented
18 evidence that he suffered extensive injuries, or that he was treated for any injuries sustained.
19 Second, there was some need for application of force. Plaintiff did not respond to multiple direct
20 orders to get out of bed to be escorted to the infirmary. Plaintiff's contention is that he did not
21 hear these orders because he was in a "deep sleep" is not credible, given that he states he had been
22 having difficultly sleeping two hours before the extraction. Moreover, plaintiff states that he was
23 not displaying signs of instability "other than being hazy from lack of sleep" (#63, p. 9).
24 However, the incident report describes plaintiff as being in a state of "severe agitation." Third,
25 there is a reasonable relationship between the need for force and the amount of force used.
26 Plaintiff was restrained in his cell and was placed in four-point soft restraints in the infirmary.
27 Plaintiff suffered no obvious injuries. Given plaintiff's high custody level, this force appears to
28 have been used in good faith effort to restore discipline and not to maliciously and sadistically

9

cause harm. Fourth, because of plaintiff's custody level and his failure to respond to direct orders, the responsible officials reasonably perceived plaintiff to be a threat. Finally, defendants attempted to temper the severity of a forceful response by first verbally ordering plaintiff to come to his cell door to be restrained for transport. Additionally, once force was actually used, defendants placed plaintiff in four-point soft restraints. Again, plaintiff did not suffer a serious injury as a result of the force.

The court must give deference to the prison officials when reviewing use of force and cannot substitute its own judgment for the judgment of prison officials. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. Based on the *Hudson* factors, defendants did not used excessive force during plaintiff's cell extraction. Further, the evidence does not support a reliable inference of wantonness. There is no issue of fact as to whether defendants used excessive force when extracting plaintiff from his cell and transported him to the infirmary. Therefore, defendants motion for summary judgment is granted as to plaintiff's claim of excessive force in count II.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that there are no issues of fact as to whether defendants violated plaintiff's Eighth Amendment right against cruel and unusual punishment by using excessive force during a cell extraction. Plaintiff failed to exhaust his administrative remedies with regard to his due process claim against defendant Hendrix in count II. Plaintiff also failed to exhaust his administrative remedies with regard to his deliberate indifference claim in count III. As such, the court respectfully recommends that defendants' motion to dismiss, or in the alternative, motion for summary judgment (#54) be **GRANTED** as to all counts.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the

1  District Court.

2      2.   This report and recommendation is not an appealable order and any notice of appeal

3  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

4  judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss, or in the alternative, motion for summary judgment (#54) be **GRANTED** as to all counts..

**DATED:** April 30, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**