**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VINCENT W. DEPASQUALE ) | 3:07-CV-00107-LRH-VPC |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| NEVADA DEPARTMENT OF ) | **OF U.S. MAGISTRATE JUDGE** |
| CORRECTIONS, et al., ) | |
| Defendants. ) | April 30, 2009 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for temporary restraining order and/or preliminary injunction (#38) and plaintiff's motion to dispense with the requirement of security (#39). Defendants opposed (#48) and plaintiff replied (#51). The court has thoroughly reviewed the record and the motions and recommends that plaintiff's motion for temporary restraining order and/or preliminary injunction (#38) and motion to dispense with the requirement of security (#39) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Vincent Depasquale ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#35). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and to due process of the law. *Id*. After screening, the remaining defendants are Adam Endel, ESP Assistant Warden of Programs, Lt. Jones, correctional officer at ESP, Dr. Bruce Bannister, NDOC medical director, Dr. Terrell Bishop, Neurologist at ESP, Pat Orders, psychologist at ESP, and

1  Sergeant Hendrix, correctional officer at ESP.[1] *Id*.

2  Plaintiff filed his third amended complaint on August 1, 2008. After screening, counts II and III remain. In count II, plaintiff alleges that defendants Jones and Orders violated his Eighth Amendment rights when they used excessive force to remove him from his cell; specifically, breaking down his door, forcing him from his bed, slamming him against the wall, which injured his elbow, and forcibly bringing him to the hospital to give him a shot against his will (#35, p. 6). Plaintiff also claims that defendant Hendrix violated his Fourteenth Amendment right to due process when he did not allow plaintiff to call witnesses at a disciplinary hearing regarding an incident involving a broken sprinkler in plaintiff's cell. *Id*. In count III, plaintiff contends that defendants are violating his Eighth Amendment rights because they are acting with deliberate indifference toward his serious medical needs. Specifically, plaintiff claims that he is infected with hepatitis C and suffers from mental health problems, and that Drs. Bannister and Bishop refuse to treat him for these maladies. *Id*. p. 7. Plaintiff also alleges that he became infected with hepatitis C when prison officials forced him to take injections of medications to treat his mental health problems. *Id*.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction Standard

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief.

---

[1] In its September 9, 2008 screening order, the court dismissed Count I of the third amended complaint (#35), and "all claims against the Nevada Department of Correction and defendants Skolnik, McDaniel, and Brooks, and all official capacity claims against all defendants" (#37).

2

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief... .

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Alternatively, the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). The Ninth Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813. A prohibitory injunction preserves the status quo while litigation is pending, while a mandatory injunction provides preliminary relief well beyond maintaining that status quo. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id*. (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

**2. Temporary restraining order**

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *Brown Jordan Intern., Inc., v. Mind's Eye*, 236 F. Supp.2d 1152, 1154 (D. Haw. 2002). Moreover, it is appropriate to treat a non-*ex parte* motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles A. Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE CIV. 2d § 2951 (2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

**B.      Analysis**

Plaintiff requests the court order that he be transferred to a different prison within the NDOC system to receive adequate treatment for his serious physical and mental health needs (#38, p. 3). Plaintiff states that, at ESP, he currently has "no treatment plan at all, but this being currently housed in an ad-seg unit with no acess (sic) to spontaneous medical treatment to prevent a fatally dangerous virus from killing him." *Id*. Specifically, plaintiff claims that defendants are not providing him adequate treatment for his hepatitis C, elbow and joint pain, or for a partially infected eye socket, and that the only way he can receive adequate medical care is by being transferred to another prison. *Id*. p. 1-2.

**1. Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

**a.      Deliberate Indifference**

A prison official violates the Eighth Amendment when he acts with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard – that the deprivation was serious enough to amount to cruel and unusual

4

1  punishment, and a subjective standard – deliberate indifference. *Id*. at 834; *see also Wilson v.*
2  *Seiter*, 501 U.S. 294, 297-304 (1991).

3  The objective standard, a "serious medical need," is met if the failure to treat a prisoner's
4  condition could result in further significant injury or the "unnecessary and wanton infliction of
5  pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Ninth Circuit's examples of serious
6  medical needs include "the existence of an injury that a reasonable doctor or patient would find
7  important and worthy of comment or treatment; the presence of a medical condition that
8  significantly affects an individual's daily activities; or the existence of chronic and substantial
9  pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

10  The subjective standard of deliberate indifference requires "'more than ordinary lack of
11  due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835, *quoting Whitley v.*
12  *Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles
13  of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent
14  of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.* To prove deliberate
15  indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally
16  interfered with medical treatment or that the way prison staff provided medical care indicates
17  deliberate indifference, and that plaintiff sustained damages as a result of such conduct.
18  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not
19  violate the Eighth Amendment simply because their opinion concerning medical treatment
20  conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th
21  Cir. 1981).

**b.   Due Process - a prisoner's right to transfer**

23  The Due Process Clause does not give inmates a right to be incarcerated in a specific
24  prison. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of
25  his liberty to the extent that the State may confine him and subject him to the rules of its prison
26  system so long as the conditions of confinement do not otherwise violate the Constitution. The
27  Constitution does not require that the State have more than one prison for convicted felons; nor
28  does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely,

1  the State has more than one correctional institution....The conviction has sufficiently extinguished
2  the defendant's liberty interest to empower the State to confine him in *any* of its prisons."
3  *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (emphasis in original). A "convicted felon does not
4  forfeit all constitutional protection by reason of his conviction and confinement in prison. He
5  retains a variety of important rights that the courts must be alert to protect." *Id*. at 225. However,
6  the Due Process clause is not triggered by *any* substantial deprivation imposed by prison
7  authorities. *Id*.

    **c.**  **Analysis**

9    Plaintiff claims that he was infected with hepatitis C in 2006, and since that time has lost
10 forty pounds and suffers from liver pains. Additionally, plaintiff has an infected eye and severe
11 pain in his elbow joints and bones (#38, p. 3). Plaintiff asserts that he is not receiving adequate
12 treatment at ESP; therefore, he should be transferred to a facility where he can receive adequate
13 care. *Id*. Plaintiff claims that the medical treatment at ESP is insufficient to treat him, and his
14 medical condition is "deteriorating daily." *Id*. p. 5. Based on numerous cited cases, plaintiff
15 argues that he is likely to succeed on the merits because defendants' failure to treat his medical
16 needs amounts to cruel and unusual punishment. *Id*. p. 4.

17   Defendants position is that a preliminary injunction is not appropriate in this case because
18 this action was filed and has been ongoing since January 2007, and plaintiff has only now found
19 it necessary to file a motion for preliminary injunction (#48, p. 3-4). Further, plaintiff does not
20 have a right to be housed in the prison of his choosing, and plaintiff has offered "no proof that
21 medical treatment would be different or improved at another NDOC facility, or that another
22 NDOC facility is better equipped to address his specific medical needs." *Id*. p. 7-8. Defendants
23 also state that plaintiff's medical conditions can be adequately treated at ESP. Plaintiff has
24 received extensive medical care at ESP; he was treated for his elbow pain and his eye was
25 examined, with no infection found. *Id*. p. 8. Plaintiff is not being medicated for his hepatitis C
26 because Dr. Gedney, an internist at Northern Nevada Correctional Center, determined that the
27 hepatitis medication is contraindicated with the medication plaintiff takes for schizophrenia, and
28 could cause violent reactions in plaintiff. *Id*. Therefore, defendant argues that "[o]f significant

1  importance is that Dr. Gedney's medical assessment of Plaintiff's Hepatitis C treatment would
2  not change if Plaintiff were transferred to a different Nevada penal institution." *Id*.
3        Plaintiff replies that he has demonstrated a likelihood of success on the merits because
4  "being seen once a month does not remedy ailing liver pains, dizzyness (sic), infected eye socket
5  and needed surgery for a complicated bone problem from previous surgery. Plaintiff's liver levels
6  are high and could become fatal if not monitored on a monthly basis" (#51, p. 5). Further, he has
7  repeatedly requested he be prescribed elbow braces, a prosthetic eye and equal treatment for
8  hepatitis C. *Id*. Plaintiff argues that this inadequate medical treatment violates his Eighth
9  Amendment rights, which merits an injunction ordering a transfer, and that the due process
10 standards regarding transfer set forth in *Meachum* and *Montanye* are inapplicable. *Id*. p. 4.
11       Plaintiff complains of three medical conditions: hepatitis C, an infected eye socket, and
12 elbow and joint pain. The evidence demonstrates that plaintiff was diagnosed with hepatitis C in
13 2007, and has had elevated levels of liver enzymes AST and ALT (#51, ex. D). On or about July
14 19, 2008, Dr. Gedney evaluated plaintiff for his hepatitis C. Dr. Gedney's assessment was that
15 "the risk of treatment in patients with [plaintiff's] type of schizophrenia with violence is too high"
16 (#48-2, ex. B). Plaintiff's liver enzyme levels are monitored on a monthly basis (#51, p. 5, ex. D).
17 Plaintiff's eye was evaluated by Greg Martin, a physician's assistant in September 2008, who
18 determined that plaintiff's "eye socket showed no signs or symptoms of infection" (#48-2, ex. B).
19 Plaintiff's eye was also apparently evaluated in Carson City (presumably at NNCC) at a previous
20 date, and his request for a prosthetic eye was denied (#51, ex. D, p. 36). Defendants concede that
21 plaintiff has bone chips in his elbow, which cause pain (#48, p. 8). However, apparently plaintiff
22 was offered surgery in 2004 to remedy his elbow condition, and plaintiff refused such surgery.
23 Plaintiff has "been seen by a medical specialist regarding his elbow and has been provided
24 medication for the aches and pains associated with the same." *Id*., ex. B.
25       Based on plaintiff's medical history, the court finds that plaintiff suffers from a serious
26 medical need. Plaintiff has hepatitis C, which "a reasonable doctor or patient would find
27 important and worthy of comment or treatment." Further, plaintiff has bone chips in his elbow,
28 which appear to cause "chronic and substantial pain." The evidence before the court at this time

does not demonstrate that plaintiff's eye problems constitute a serious medical need. In September 2008, plaintiff did not have an eye infection. It is unclear whether he suffered from eye infections in the past. However, plaintiff has not demonstrated that he is likely to prove the subjective standard - that defendants acted with deliberate indifference toward his serious medical needs. The evidence before the court demonstrates that plaintiff has been consistently treated and tested for hepatitis C and his elbow and joint pains. There is no evidence that medical staff have recklessly disregarded a substantial risk of serious harm to plaintiff. *Id.* Further, plaintiff has presented no evidence that demonstrates that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. Although Dr. Gedney declined to treat plaintiff with a specific hepatitis medication based on a contraindication, prison medical staff have not denied plaintiff all treatment or intentionally interfered with his hepatitis C treatment. Plaintiff's enzyme levels are monitored, and plaintiff sees by medical staff on a monthly basis. Additionally, plaintiff is given pain medication for his elbow pain. Plaintiff wrote to Dr. Bannister on at least two occasions regarding his treatment and received responses on both occasions (#51, ex. B). Although plaintiff may disagree with this treatment, prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. Additionally, plaintiff has no due process right to be transferred to another prison. Therefore, plaintiff has not presented evidence of deliberate indifference and has not demonstrated a likelihood of success on the merits.

### 2. Irreparable Injury

To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably injured without the injunction. *Johnson*, 72 F.3d at 1430. "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

8

1    Plaintiff does not directly address the irreparable injury requirement. However, it appears
2  that he is arguing that because Dr. Gedney found the hepatitis medication to be contraindicated
3  with his schizophrenia medication, she is not allowing his hepatitis to be treated in any way.
4  Therefore, his hepatitis will continue to worsen and will cause irreparable damage to his liver
5  (#38, p. 7). Plaintiff claims that Dr. Gedney did not refer his medical or mental health files to
6  other doctors, "nor did she provide [plaintiff] with a medical packet about the facts of [hepatitis
7  C], nor did she give [plaintiff] a medication or vitamin or dietary meal program to at least curb
8  the illness." *Id*. Plaintiff contends that he is "in need of competent [doctors] whos (sic) specializes
9  (sic) in liver levels and bone problems...[which] can lead to a possible longer life, to my extent
10 (sic) to combat Hepatitis-C. A transfer to a medical facility would obviate this need." *Id*.

11   Defendant argues that plaintiff will not suffer irreparable injury if he remains at ESP.
12 Defendants note that they attach "several Affidavits from NDOC personnel employed in the
13 medical field indicating that there is nothing urgent or critical about Plaintiff's current medical
14 condition, and that ESP is capable of addressing his medical needs" (#48, p. 9). Additionally,
15 defendants again argue that the almost two-year time period between the date plaintiff
16 commenced this lawsuit and the filing of the motion for preliminary injunction suggests that
17 plaintiff is not suffering irreparable injury as a result of being housed at ESP. "An almost two (2)
18 year delay does not lend itself to someone suffering potential irreparable injury." *Id*. p. 9-10.

19   Plaintiff replies that he has offered proof of how other NDOC institutions could address
20 his medical conditions more effectively than ESP (#51, p. 6). Further, he states that he "has no
21 way of knowing other than to guess what type of treatment would be available in another medical
22 [facility] to prevent further injury." *Id*. Plaintiff also claims that he did not file the instant motion
23 for preliminary injunction until now because he was unaware that he was infected with hepatitis
24 C until February 2008 when he had a tumor removed at ESP. *Id*. With regard to his elbow pain,
25 plaintiff states that he was not having "critical pain" until September 2008 when he filed the
26 motion for preliminary injunction. *Id*. He also notes that his elbow was not considered for surgery
27 after it was discovered that such surgery referral was mistakenly given.

28   Based on the evidence presented, plaintiff has not demonstrated that he will suffer an

9

immediate injury if he is not transferred to another prison. Plaintiff is receiving frequent medical care at ESP. There is no evidence that he will receive additional treatment at another facility. Dr. Gedney's recommendations regarding plaintiff's hepatitis C will have the same effect at any prison. The medical staff at ESP is monitoring plaintiff's liver enzyme levels on a monthly basis. Despite being infected with hepatitis C, plaintiff has not demonstrated that he is suffering from urgent medical needs at this time. If his liver enzyme levels were to reach a medically unacceptable level, defendants state that plaintiff can be temporarily transferred to another facility for treatment (#48, ex. A, B). It appears that plaintiff has been transferred to facilities in Carson City in the past to be tested and treated (#51, ex. D, p. 36, #48-2, ex. B). With regard to plaintiff's elbow pain, plaintiff has not demonstrated that he will suffer immediate injury if he is not transferred. Plaintiff has been examined by a specialist and receives pain medication for his elbow pain. Plaintiff has not shown that he will suffer immediate injury or that he will be irreparably injured if the medical staff at ESP continues to treat his pain.

### 3. Balance of Hardships and Public Interest

Because the court concludes that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the Court has not addressed the balance of hardships or public interest elements.

### 4. Alternative Test

The Ninth Circuit has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). Above the Court concluded that plaintiff has not shown that he can meet the first alternative test – a likelihood of success on the merits and irreparable injury.

Regarding the second alternative test, there are not at this time "serious" questions as to plaintiff's Eighth Amendment claim. Further, the balance of hardships do not tip "sharply" in plaintiff's favor; defendants have an interest in maintaining safety and security and in determining

where an inmate is housed. Defendants have demonstrated that plaintiff is a custody level 5, which is the highest security level. Therefore, transfer of plaintiff to a less secure NDOC institution weighs the balance of hardships in favor of defendants. Thus, plaintiff has not met the second alternative test.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not provided evidence to the court that he is likely to succeed on the merits of his Eighth Amendment claim, nor has he demonstrated he will suffer irreparable harm in the absence of an injunction. As such, the court recommends that plaintiff's motion for a preliminary injunction and/or temporary restraining order (#38) be **DENIED**. The court also recommends that plaintiff's motion to dispense with the requirement of security (#39) be **DENIED as moot**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for a preliminary injunction and/or temporary restraining order (#38) be **DENIED**, and that plaintiff's motion to dispense with the requirement of security (#39) be **DENIED as moot**.

**DATED:** April 30, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**